UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BRENT HARNISH, JULIE HARNISH, STEVEN HECKAMAN, and JANIS KENGIS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 3:10 CV 511  PPS |
| LIBERTY FARM EQUINE REPRODUCTION CENTER, LLC, DEGRAFF STABLES KENTUCKY, LLC, DEGRAFF STABLES, INC., and ROBIN DEGRAFF, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Defendants Liberty Farm Equine Reproduction Center, LLC, DeGraff Stables Kentucky, LLC, DeGraff Stables, Inc., and Robin DeGraff's Motion to Dismiss. [DE 26, 27.] Plaintiffs Brent and Julie Harnish, Steven Heckaman, and Janis Kengis brought this action after their prized horses were infected with a disease while in the Defendants' care. The Defendants move to dismiss for lack of personal jurisdiction, or alternatively, they seek dismissal under the common law doctrine of *forum non conveniens*. For the following reasons, the motion is **DENIED**.

## FACTUAL BACKGROUND

I begin with the facts as they are alleged in the Complaint and as they are fleshed out in two affidavits filed by the parties. Defendant Robin DeGraff is a horse breeding specialist who – along with the corporate entity Defendants, Liberty Farm, DeGraff Stables Kentucky, and DeGraff Stables, Inc. – offers professional equine breeding, boarding, and other reproduction

-1-

services at a farm in Midway, Kentucky. The Defendants are citizens of Ohio, Kentucky, or both. None of the Defendants are formed or have any operations in the State of Indiana; hold any assets, property, or bank accounts in Indiana; or breed or board horses in Indiana. Also, while they do advertise in the United States and beyond through trade magazines and the Internet, the Defendants do not target their ads to Indiana.

The Plaintiffs are horse owners, breeders, and/or trainers, located in Indiana (the Harnishes), Texas (Heckaman), and Wisconsin (Kengis). According to the Harnishes, DeGraff visited their farm in South Bend, Indiana to convince them to utilize the Defendants' professional services. Based on this visit, the Harnishes entrusted their prized horses to the Defendants' care for semen collection, boarding, marketing, advertising, and other related services. Shortly thereafter, Heckaman and Kengis did the same.

But while at the Defendants' farm in Kentucky, the Plaintiffs' horses became infected with Contagious Equine Metritis ("CEM") – a sexually transmitted disease among horses. The Defendants then informed the public of the CEM outbreak by posting the information to their website. They also sent the Harnishes semen contaminated with CEM, spreading the disease to the Harnishes' horses in Indiana (among other places). The Defendants also worked with other horse owners in Indiana who were also injured by their actions. According to the Plaintiffs, DeGraff exercised complete control over the finances and business practices of the corporate Defendants.

As a result, the Plaintiffs filed a Complaint in this Court alleging (1) bailment, (2) negligence, (3) professional negligence, (4) violation of privacy through publication of private facts, (5) tortious interference with business relations, (6) negligent supervision (or alternatively,

reckless disregard), and (7) breach of fiduciary duty. The Defendants responded by filing this motion. They argue for dismissal because the Court lacks personal jurisdiction over the Defendants, or alternatively, dismissal under the outdated doctrine of *forum non conveniens.*

## **DISCUSSION**

**I.** **Personal Jurisdiction**

The first issue is whether this Court has personal jurisdiction over the Defendants. A federal court's personal jurisdiction is determined by the laws of its forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Indiana's long-arm statute allows jurisdiction so long as it's consistent with the Due Process Clause of the Fourteenth Amendment. Ind. R. Trial. P. 4.4(a); *Rodriguez v. Cavitec AG*, 2010 WL 2519715, at *4 (N.D. Ind. June 14, 2010). As a result, the state statutory and federal constitutional inquiries merge, and the determinative issue is whether the exercise of jurisdiction over these Defendants comports with the federal Due Process Clause. *Tamburo*, 601 F.3d at 700; *Terry McKannan v. National Council of Young Men's Christian Assocs. of the U.S.*, 2010 WL 4668437, at *3 (S.D. Ind. Nov. 9, 2010). The Plaintiffs have the burden of establishing personal jurisdiction, though here, they must only make a prima facie showing of the jurisdictional facts. *Tamburo*, 601 F.3d at 700. And at this stage, I must accept as true all well-pleaded facts in the Complaint and resolve any factual disputes in the Plaintiffs' favor. *Id.*

To confer jurisdiction, due process requires that a defendant has purposefully established "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations and quotations omitted); *Burger King Corp. v. Rudzewicz*,

-3-

471 U.S. 462, 474 (1985). Crucial to this analysis is a showing that the defendant "should reasonably anticipate being haled into court [in the forum State]" because it "purposefully avail[ed] itself of the privilege of conducting activities" there. *Burger King*, 471 U.S. at 474-75. Personal jurisdiction can be general or specific depending on the extent of the defendant's contacts. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex*, 623 F.3d 440, 444 (7th Cir. 2010). Here, because the Plaintiffs do not assert (and the evidence does not support) a claim of general jurisdiction, the only issue is whether this Court can exercise specific jurisdiction over their claims.

Specific personal jurisdiction "turns on a particularized assessment of the 'relationship among the defendant, the forum, and the litigation.'" *Saylor v. Dyniewski*, 836 F.2d 341, 344 (7th Cir. 1988) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). In particular, specific jurisdiction is appropriate where (1) the defendant purposefully availed himself of the privilege of doing business in a state, (2) the alleged injury "arises out of or relates to" the defendant's activities in that state, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 702. This test aims to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id*. (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

A.     **Purposeful Availment**

I must first determine whether the Defendants' purposefully availed themselves of the privilege of conducting business in Indiana. The Harnishes first spoke with DeGraff on the telephone about the Defendants' breeding services in 2007. But, following their initial

conversations, the Harnishes had second thoughts about using the Defendants' services. Not willing to take no for an answer, "DeGraff requested a meeting with [the Harnishes] at [their] home in South Bend, Indiana to discuss the prospect of working together." [DE 29 ¶ 4.] At the meeting in South Bend, DeGraff assured the Harnishes that their horses would receive the highest level of care, and she described in detail how each horse would be treated and how the Defendants would market and promote their prized stallion. [DE 10 ¶ 42.] According to the Harnishes, "[i]n reliance on her visit and the representations she made to us at that time, we committed to entering into a joint business relationship with her and her businesses." [DE 29 ¶ 9.] Not only did Degraff come to Indiana to make her sales pitch, she also made the arrangements to pick up at least one of the Harnishes' horses from Indiana. [DE 10 ¶ 50.] Once the Harnishes' horses were delivered to the Defendants' Midway, Kentucky farm, the Defendants collected semen from the Harnishes' horses and sent it back to Indiana, pursuant to the parties' agreement. This led to several of the Harnishes' horses in Indiana getting infected with CEM.

These contacts are sufficient to confer jurisdiction. First, DeGraff's trip to South Bend to solicit business and negotiate the terms of the parties' relationship is enough in itself to indicate that the Defendants' purposefully availed themselves of the privilege of doing business in Indiana. *See Burger King*, 471 U.S. at 473 ("[W]e have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject" to suit in that state); *see, e.g., KnowledgeAZ, Inc. v. Jim Walter Resources, Inc.*, 452 F. Supp. 2d 882, 896 (S.D. Ind. 2006) ("When [the defendant] deliberately entered into a continuing contractual relationship with [the plaintiff], an Indiana corporation, it purposefully

availed itself of the privilege of conducting business in Indiana"); *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F.Supp. 1255, 1264 (S.D. Ind. 1997) ("[A] defendant's 'active solicitation, even if for just a single contract, amount[s] to purposeful establishment of contacts with [a] forum that easily satisfies the dictates of due process.'"); *Hexacomb Corp. v. Damage Prevention Prod.'s Corp.*, 905 F.Supp. 557, 562-63 (N.D. Ind. 1995) (finding the defendant's single trip to Indiana following the formation of the parties' contract sufficient); *Woodmar Coin Center, Inc. v. Owen,* 447 N.E.2d 618, 621 (Ind. App. 1983) (defendant "purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident").

Second, pursuant to the parties' agreement, the Defendants repeatedly shipped semen to the Harnishes' farm in Indiana. Unfortunately, the semen was contaminated, causing injury to the Harnishes' horses in Indiana. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (in tortious interference suit, jurisdiction proper where the injury occurred). Indeed, the evidence suggests that the Defendants provided professional services to other horse owners in Indiana, and some of their horses were also infected by the contaminated semen. Finally, according to the Complaint, Degraff actually took it upon herself to make the arrangements to pick up at least one of the Harnishes' horses in Indiana and deliver it to her farm in Kentucky. Far from "random, fortuitous, or attenuated," *Burger King*, 471 U.S. at 475, these contacts show that the Defendants specifically targeted business in Indiana, and thus purposefully availed themselves of the privilege of doing business in the State.

Moreover, the Defendants' attempts to whittle down the number of defendants tied to these contacts are unpersuasive. First, they suggest that DeGraff was only representing Liberty

Farm and DeGraff Stables, Inc. when she visited the Harnishes farm, [DE 31 at 3], and so DeGraff Stables Kentucky, which they claim was formed to purchase the Midway, Kentucky farm, has no contacts to Indiana. But the Defendants do not deny that DeGraff is an agent of DeGraff Stables Kentucky. And the Defendants present no evidence contradicting Plaintiffs' allegation that DeGraff Stables Kentucky "is engaged in the business of, among other things, offering professional equine breeding and boarding services." [DE 10 ¶ 13.] So, while later evidence may free DeGraff Stables Kentucky of liability, at this stage, DeGraff's contacts to Indiana are imputed to all of the named Defendants in this action. *See Burkemper v. Waite*, 2007 WL 781658, *4 (N.D. Ind. March 12, 2007) ("[T]he acts of an agent in a forum subject the principal to the personal jurisdiction of that forum state.") (citing *IDS Life Ins. Co. v. Sun Am. Life Ins. Co.,* 136 F.3d 537, 541 (7th Cir. 1998)); *Int'l Med. Group Inc. v. American Arbitration Ass'n*, 2001 WL 984808, at *6 (S.D. Ind. July 26, 2001) (same).

Also, the Defendants assert – without citation or explanation – that this Court does not have personal jurisdiction over DeGraff because she "made no contact whatsoever with Indiana in her individual capacity." [DE 26 at 11.] In this, they seem to invoke the fiduciary shield doctrine, which precludes attempts to assert jurisdiction over an individual in her personal capacity if the only basis for jurisdiction is her contacts with the forum while acting as a fiduciary of a corporation. But the U.S. Constitution does not shield persons who act as corporate agents from individual-capacity suits. *Hardin Roller Corp. v. Universal Printing Machinery, Inc.*, 236 F.3d 839, 842 (7th Cir. 2001) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)). And federal courts in this State have found it unlikely that the Indiana Supreme Court would adopt the doctrine under the Indiana long arm statute, and I agree. *See CR3 of Indiana,*

*LLC v. Specialty Surfaces Int'l, Inc.*, 2008 WL 3914092, at *2 (S.D. Ind. Aug. 19, 2008); *Huber v. House*, 2004 WL 3130618, at *3 (S.D. Ind. Dec. 7, 2004); *Int'l Med. Group*, 2001 WL 984808, at *6; *Health Mgmt. Prof'ls, Inc. v. Diversified Bus. Enterp., Inc.*, 882 F.Supp. 795, 799 (S.D. Ind. 1995); *Intermatic, Inc. v. Taymac Corp.*, 815 F.Supp. 290, 293 (S.D. Ind. 1993). Thus, the fact that DeGraff may have visited Indiana solely as the Defendants' agent does not shield her from this Court's exercise of personal jurisdiction over her individually.[1] The Defendants' contacts with Indiana are thus sufficient to confer jurisdiction.

**B.     "Arise out of or Relate to"**

In addition to minimum contacts, to establish specific jurisdiction the Plaintiffs' injuries must "arise out of or relate to" the Defendants' forum-related activities. *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) ("Mere minimum contacts [] are not sufficient to establish specific personal jurisdiction."). The parties rely on different standards in applying this language. The Defendants contend that the Plaintiffs' injuries do not arise from acts taken place in Indiana, but instead "arise from allegations that their horses were infected by CEM while at Liberty Farm in Midway, Kentucky." [DE 26 at 10.] Essentially, the Defendants argue that any injuries "arise out of or relate to" Kentucky because the proximate cause of the injuries occurred there. The Plaintiffs, however, go the "but for" route. They assert that "if [DeGraff] had not visited [Indiana] and made the representations she made . . . there would be no relationship, nor events or injury at issue in this case." [DE 28 at 4.]

---

[1] *See also Hardin*, 235 F.3d at 842-43 (finding that "it would press corporate form beyond the breaking pont to suppose that" a defendant who was the principal owner, and at times sole employee, of the corporate-defendant, were different entities, where the individual negotiated and performed the contracts at issue).

Both sides miss the mark. The Seventh Circuit recently discussed the applicable standard for determining whether a plaintiff's injury arises out of or relates to a defendant's forum-related activities in *uBid v. GoDaddy Group, Inc.*, 623 F.3d 421, 429-32 (7th Cir. 2010). The Court in *uBid* first noted the competing approaches adopted by other circuit courts, and then declined to endorse either the proximate cause approach – which requires that the defendant's contacts to a forum be the legal cause of the plaintiff's injuries for the injuries to arise out of those contacts – or the but-for approach – which only requires that the plaintiff's injuries would not have occurred but-for the defendant's contacts to the forum. *Id*. at 430 (finding the but-for approach "vastly overinclusive" while the proximate cause approach "would exclude too many claims"); *see Tamburo*, 601 F.3d at 708 (comparing the breakdown in the circuits). Instead, the Court endorsed the "middle-ground approach" adopted by the Third Circuit in *O'Connor v. Sandy Lane Hotel, Co.*, 496 F.3d 312, 322 (3d 2007), which eschews a mechanical test in favor of a more pragmatic focus on the "tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *uBid*, 623 F.3d at 430 (quoting *O'Connor*). In other words, "the precise causal relationship between contacts and claim [is] not important," so long as the reciprocal relationship between the parties makes jurisdiction in the state foreseeable. *Id*.

The facts of *O'Connor* are instructive here. In *O'Connor*, a Pennsylvania couple had been solicited in Pennsylvania by a resort in Barbados. 496 F.3d at 322. The couple then contracted with the resort for a spa vacation there. But when one of the plaintiffs was injured during his spa treatment, they sued the resort for negligence in Pennsylvania. The Third Circuit found personal jurisdiction in Pennsylvania proper because the plaintiffs' negligence claim was related to the defendant's contractual obligation that arose in Pennsylvania. *Id*. at 323-24 ("It is

enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims."). As the Court in *uBID* explained of *O'Connor*: "where the defendant's contacts with Pennsylvania proved little about the plaintiff's negligence claim, [these contacts] undoubtably gave the defendant fair warning that the very business it sought in Pennsylvania might injure a Pennsylvania resident." 623 F.3d at 430.

The same is true here. DeGraff requested a meeting at the Harnishes' farm to convince them to utilize the Defendants' horse breeding services. Based on DeGraff's representations in Indiana, the parties entered an agreement in which the Harnishes entrusted their horses to the Defendants' care in Kentucky for boarding and semen collection (among other things). The Plaintiffs' horses ultimately acquired CEM while in Kentucky, and the disease spread to Indiana through the Defendants' shipment of the semen back to Indiana. Like in *O'Connor*, the Defendants' legal obligations that arose in Indiana (the care of the Harnishes' horses during and after the breeding process, among others) are meaningfully linked to the Plaintiffs' claims (the Defendants' negligent care and related actions causing them injuries).[2] Indeed, because the Defendants had "fair warning that the very business [they] sought in [Indiana]" might injure the Harnishes there, litigation in the forum was reasonably foreseeable. *uBid*, 623 F.3d at 430. So the Plaintiffs' have shown that their injuries "arise out of or relate to" the Defendants' forum-related activities.

---

[2] I am mindful that personal jurisdiction must be established separately as to each count. *Beveridge v. Mid-West Management, Inc.*, 78 F. Supp. 2d 739, 744 (N.D. Ill. 1999). But because all of the Plaintiffs' counts arise out of or relate to the Defendants' contacts with Indiana – in particular, representations made by DeGraff in Indiana, and the Defendants' actions giving rise to and following the CEM outbreak – I have addressed them together.

C.  **Fair Play and Substantial Justice**

Finally, I must determine whether Indiana's exercise of personal jurisdiction over the Defendants would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316. In other words, forcing the Defendants to court here must be constitutionally reasonable. Several factors are relevant to this inquiry, including the burden on the Defendants; Indiana's interest in adjudicating the dispute; the Plaintiffs' interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477. Notably, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*; *see Hoffa Engineering, LLC v. Craney*, 2007 WL 831820, at *7 (S.D. Ind. Mar. 12, 2007) ("Given the showing of contacts in this case, the burden shifts to [the defendant] to show that jurisdiction would nonetheless be unfair.").

The Defendants do no such thing. First, the Defendants present no argument – much less a compelling case – explaining why jurisdiction in Indiana is unreasonable notwithstanding their contacts with the State. Indiana plainly has an interest in resolving disputes involving the spread of a horse disease in Indiana by out-of-state companies. And Indiana is clearly more convenient to at least half of the Plaintiffs. The remaining factors are neutral. As a result, Indiana's exercise of personal jurisdiction over the Defendants does not offend traditional notions of fair play and substantial justice, and so personal jurisdiction in this Court is proper.

## II.    Forum Non Conveniens

Alternatively, the Defendants move to dismiss under the common law doctrine of *forum non conveniens* so the case can be re-filed in Kentucky. Under the *forum non conveniens* doctrine, a court may dismiss a case if an alternative forum is available and if dismissal would serve the interests of justice. *Hyatt Int.'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002). But in federal courts, the doctrine has been largely replaced by the transfer of venue statute, 28 U.S.C. § 1404(a). *Id*. So *forum non conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad." *Sinochem Int.'l Co. Ltd. v. Malaysia Int.'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (noting the possibility of "rare instances" in which the doctrine remains applicable for transfers to state or territorial courts) (internal quotation and citations omitted); *Coco*, 302 F.3d 717 ("[I]t remains available as a ground for dismissal when a foreign court provides a more convenient forum."). That's not the case here, as the Defendants seek to move the case to a federal court in eastern Kentucky. So the *forum non conveniens* doctrine is inapplicable.

Even though the Defendants did not make the request explicitly, I will address transfer under §1404(a) because the factors under that statute are similar to the *forum non conveniens* factors presented by the Defendants. *See Bethany Lowe Designs, Inc. v. ESC Trading Co.*, 2011 WL 134058, at *2 (C.D. Ill. Jan. 14, 2011) ("Statutory *forum non conveniens* was codified in 28 U.S.C. § 1404(a)."). Section 1404(a) states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In evaluating convenience, courts consider the availability of and access to witnesses, each party's access to and distance

from resources in each forum, the location of the material events, and the relative ease of access to sources of proof. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The "interest of justice" element looks to docket congestion, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.*

Notably, the moving party bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Novogroder Cos., Inc. v. Hartford Fire Ins. Co.*, 2010 WL 4630839, at *1 (N.D. Ind. Nov. 8, 2010) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)); *Ashland Jewelers, Inc. v. NTR Metals, LLC*, 2011 WL 1303214, at *6 (N.D. Ill. Mar. 31, 2011) ("A plaintiff's choice of forum is entitled to substantial weight" and "should rarely be disturbed unless the balance weighs strongly in the defendant's favor.").

The Defendants have not met their burden. While they claim that physical proof and witnesses related to the horses' care will be in Kentucky, proof and witness of the contaminated semen, the horses' injuries, and the spread of CEM are in Indiana. And importantly, the Defendants present no evidence detailing the number of witnesses or the amount of proof in Kentucky. *See Bethany*, 2011 WL 134058, at *2 (denying motion to transfer venue because the Defendants relied on unsupported and "general conclusory statements"). Moreover, while they argue that the local community in Midway, Kentucky has an interest in the spread of disease at the farm, so too do the people of Indiana, where the spread of the disease caused significant injury. Finally, the Defendants claim that a choice-of-law analysis requires me to apply Kentucky law, a task in which (presumably) it believes Kentucky courts are better equipped.

But even if Kentucky law governs (an issue I need not decide), "[w]here the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts." *First Nat. Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006). And neither party argues that the law applicable to this case is either complex or unsettled. Based on these factors,[3] the Defendants have failed to show that Kentucky is a "clearly more convenient" forum, *Novogroder*, 2010 WL 4630839, at *1, and so their motion is denied.

## CONCLUSION

Consequently, the Defendants' Motion to Dismiss is **DENIED**. [DE 26, 27.]

**SO ORDERED**.

**ENTERED**: May 6, 2011.

                                          s/ Philip P. Simon
                                          PHILIP P. SIMON, CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT

---

[3] The Defendants do not present evidence or argument concerning the other factors listed above, and so I give them no consideration.