UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRENT HARNISH, JULIE HARNISH, ) | |
| STEVEN HECKAMAN, and ) | |
| JANIS KENGIS, ) | |
|         Plaintiffs, ) | |
| ) | |
|   v. ) | 3:10 CV 511  PPS |
| ) | |
| LIBERTY FARM EQUINE ) | |
| REPRODUCTION CENTER, LLC, ) | |
| DEGRAFF STABLES KENTUCKY, LLC, ) | |
| DEGRAFF STABLES, INC., and ) | |
| ROBIN DEGRAFF, ) | |
| ) | |
|         Defendants, ) | |
|         Third Party ) | |
|         Plaintiffs, ) | |
|   v. ) | |
| ) | |
| UNITED STATES and ) | |
| TIM and SHANNON GILLESPIE, ) | |
| ) | |
|         Third Party ) | |
|         Defendants. ) | |

**OPINION AND ORDER**

Several valuable stallions contracted an equine disease from a breeding facility in Kentucky.  The owners of those stallions sued a number of defendants including Liberty Farm Equine Reproduction Center, LLC, DeGraff Stables Kentucky, LLC, DeGraff Stables Inc., and Robin DeGraff.  For simplicity sake, I will refer to those defendants collectively as "the Stables."  The Stables added the United States and others as Third Party Defendants.  The gist of the claim against the United States is that it did a poor job at identifying and dealing with the outbreak of the equine disease that afflicted the prized stallions owned by the Plaintiffs.  The government seeks dismissal of the Third Party Complaint. [DE 81].  Because the United States enjoys

sovereign immunity from this type of action, dismissal is appropriate.

## Background

There is a hodgepodge of federal entities and regulations that deal with the importation of foreign animals, and one must understand that regulatory framework in order to fully understand the Stables' Third Party Complaint. The United States Department of Agriculture ("USDA") monitors the import of foreign animals through the Animal and Plant Health Inspection Service ("APHIS"), and the National Veterinary Services Laboratories ("NVSL") division. The NVSL is responsible for diagnosing domestic and foreign animal diseases. The Department of Veterinary Services ("VS") is an operational program within the USDA responsible for improving the health, quality, and marketability of animals, animal products, and veterinary biologics in the United States. The USDA accredits and works in conjunction with non-Federal laboratories that assist in animal testing. These non-Federal laboratories are referred to collectively as the National Animal Health Laboratory Network ("NAHLN").

To ensure that imported animals do not carry contagious diseases, the USDA implemented a set of regulations. One such disease the USDA regulates is Contagious Equine Metritis ("CEM"), a foreign animal disease that's characterized as a transmissible venereal disease. *See* 9 CFR § 93.301 *et seq*. Although testing for CEM is not required for all horses, to prevent the spread of CEM to the United States, the USDA has identified countries where CEM exists and set forth requirements for testing horses coming from those countries. *Id.* § 93.301(e)(1)(iv). The horses that test negatively for CEM are transported to a state approved facility for quarantine of horses from CEM-affected areas. *Id.* §§ 93.301(e)(1)(I), (e)(2)(I). When the horses arrive at the approved facility, they are quarantined for additional CEM testing,

through either the USDA or a non-federal approved laboratory. *Id.* § 93.301(e)(2)(iii).  If a horse tests positive for CEM, that horse must be treated and re-tested. *Id.* § 93.301(e)(3).

Prior to 2008, the USDA declared the United States a CEM Free Country.  Unfortunately, around that same time a CEM outbreak occurred, beginning with a foreign horse that had been imported through a quarantine facility in Wisconsin.  According to the Third Party Complaint, a stallion owned by Tim and Shannon Gillespie and named Zips Heaven Sent was boarded at that same Wisconsin facility.  Apparently that's where Zips was infected with CEM.  Zips was then transferred to the defendants' facility in Kentucky for breeding.  He arrived there on December 12, 2007, and he brought along with him the CEM.  This caused an outbreak of the disease at the Stables and led to several of the Plaintiffs' prized stallions to be infected.  The Stables alleges that it had no knowledge that Zips was infected with CEM, and that no one knew he was infected, including the USDA, which didn't issue a CEM outbreak warning.

The Plaintiffs seek recovery from the Stables, alleging that the Stables were negligent in causing their horses to be infected by CEM while they were boarded there.  The Third Party Complaint includes claims for contribution, negligence, and indemnification against the USDA pursuant to the Federal Tort Claims act.  They specifically allege that the USDA had a duty to exercise reasonable case in quarantining, testing, and examining foreign horses, as well as a duty to warn horse owners and the equine industry of any outbreaks in foreign animal diseases in the United States.  According the Stables, the USDA breached that duty in failing to identify the CEM risk, failing to properly quarantining foreign horses infected with CEM, declaring CEM-infected imported foreign horses as free and clear of CEM, and in failing to train USDA employees and implement policies and procedures to prevent a CEM outbreak. [DE 50, at 6-7.].

The United States has been substituted as the proper party and it now seeks dismissal for failure to state a claim.

## Discussion

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA contains a limited waiver of sovereign immunity. 28 U.S.C. §§ 1346(b)(1), 2401, 2671-80. Section 1346(b)(1) permits recovery of money damages against the United States in the following circumstances:

> [F]or injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

However, section 2680 sets forth a number of exceptions to the FTCA's limited waiver, only one of which I need to discuss. Under the discretionary function exception to the FTCA, the United States will not be held liable based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or any employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception to the FTCA arose from "Congress' desire to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).

To meet the discretionary functions exception, the challenged conduct must involve an "element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008). This occurs when no federal statute,

regulation, or policy prescribes a course of action for an employee to follow.  *Gaubert*, 499 U.S. at 322; *Calderon v. United States*, 123 F.3d 947, 949 (7th Cir. 1997).  In addition, the challenged conduct must involve policy considerations.  *Gaubert*, 499 U.S. at 322; *Calderon*, 123 F.3d at 949.

The Third Party Complaint doesn't provide facts as to how the USDA was involved in the outbreak of CEM.  Instead, it alleges four general ways the USDA was negligent: (1) failing to properly regulate importation of horses; (2) failing to supervise and train employees in Federal and non-Federal facilities; (3) its certification, accreditation, and monitoring of non-federal entities; and (4) failing to issue an outbreak warning. [DE 50, at 6-7.] Setting aside the fact that these allegations are conclusory and lack factual support, these claims against the United States are barred because the USDA's alleged conduct falls squarely under the discretion function exception.

I'll begin with the general allegations that the USDA failed to "properly quarantine foreign domestic horses infected with CEM," and it negligently declared "CEM-infected imported horses as free and clear of CEM and permitting their entry into the United States." [DE 50, at 7.]  The Stables contends that such conduct by the USDA wasn't discretionary because the regulations contain an outright prohibition of importation of horses with CEM.  *See* 9 C.F.R. § 93.301(c).  I disagree.

It's certainly true that these regulations prohibit importation of a horse with CEM.  But the prohibition of CEM doesn't automatically translate to a claim under the FTCA.  The two-step test that determines the applicability of the discretionary function exception requires me to consider the specific actions the USDA took or failed to take.  And when considering that the

5

Stables' real problem is with the USDA's alleged failure to train, monitor, and warn, it becomes clear that the discretionary function exception applies.

Although the Stables don't allege specific facts in support, one of its theories is that a CEM-infected horse entered the United States because the USDA was negligent in training, accrediting, and monitoring USDA/APHIS/VS employees and agents.  But allegations relating to "hiring, training, and supervision" are decisions resulting from policy judgments.  *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C Cir. 1997); *Gaubert*, 499 U.S. at 322 (sovereign immunity bars suits where governing statutes leave room for choice).  Had the Stables pointed to a set of regulations or statutes delineating how the USDA must hire, train, and supervise its employees and agents, the exception may not apply.  But they haven't –in fact, they even admit that they don't know anything about the USDA's training practices [DE 85, at 9] – so these allegations fall under the discretionary function exception.

The same is true as to the allegations that the United States acted negligently in training, accrediting, certifying, and supervising the NAHLN facilities.  [DE 50, at 7.] Again, the claim is difficult to decipher because it completely lacks detail.  However, I'll interpret it as a claim that the USDA didn't properly approve the non-Federal facilities involved in the quarantine process. [DE 50, at 4.]

This negligence claim is conclusory and unsupported by facts that the USDA somehow supervised and approved the facility they claim broke protocol.  But more basically, the Stables complain about discretionary conduct.  Like the allegations as to the USDA employees, these allegations find negligence in the USDA's decision-making.  For the same reason as above, the USDA's conduct as to the non-Federal facilities is protected by the discretionary function

exception.

Finally, in alleging that the USDA was negligent in failing to warn of the CEM outbreak prior to 2008, the Stables reference discretionary conduct. [DE 50, at 7.] These allegations suffer from the same problems as all of their allegations – the Stables don't allege any facts as to what the USDA knew at the time of the alleged outbreak, and whether a decision not to warn was made. Even if they had alleged such facts, the decision of when and how to warn of a disease outbreak has been protected by the discretionary function exception. It can be costly to issue warnings. So the decision to warn about a certain peril requires balancing safety concerns with economic concerns, which is plainly a discretionary function. *See Maas v. United States*, 109 F.3d 1198, 1201 (7th Cir. 1997) (stating that the decision not to warn balances "safety with economic concerns"); *Cisco*, 768 F.2d at 789 (finding that the EPA's decision not to warn about a contaminated landfill was a "political, social and economic judgment[] pursuant to its grant of authority. [The plaintiff] may not challenge those judgments under the FTCA because they fall within the discretionary function exception."). Further, the Stables doesn't describe how a decision to warn or not to warn in this context somehow does not involve a choice. All in all, this is behavior that falls under the discretionary function exception, barring suit against the United States.

Had I concluded that the discretionary function exception didn't apply, the Stables still wouldn't have an FTCA claim. As I've outlined above, the Stables' allegations against the United States are grounded on federal regulations. Yet a claim under the FTCA can't exist without an underlying state claim that could be brought against a private individual. *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) ("'law of the place' means law of the State – the source of

substantive liability under the FTCA"). Court have found that a claim under the FTCA doesn't exist where the claim arises from a federal duty. *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997) ("It is virtually axiomatic that the FTCA does not apply 'where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs'") (modification in original); *Art Metal-USA, Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985) ("violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA").

The Third Party Complaint doesn't reference the state law that it's relying on for its claim against the United States. Instead, their position is that the federal regulations created a duty of care that they breached in their implementation of the regulations. Those regulations certainly imposed a duty upon the USDA, but it was a duty imposed on an administrative agency. Such a duty is not akin to that of a individual's duty of care under state law. *See Myers v. United States*, 17 F.3d 890, 905 (6th Cir. 1994) (referring to cases against regulatory agencies as "situations in which only governments can find themselves and, therefore, ordinary state-law principles of private liability do not, and cannot, apply"). As the Stables's claim against the United States lacks a basis in state law, their claim cannot proceed as it presently stands.

For the foregoing reasons, the United States' Motion to Dismiss is **GRANTED**, but the dismissal will be without prejudice. The Stables will be given an opportunity to amend their third party complaint to attempt to rectify the deficiencies noted above. The Stables are therefore given thirty days from the date of this Order to file an Amended Complaint should they so choose.

**SO ORDERED**.

ENTERED: April 3, 2012

                                                                       s/ Philip P. Simon
                                                                       PHILIP P. SIMON, CHIEF JUDGE
                                                                       UNITED STATES DISTRICT COURT